**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**UNITED STATES of AMERICA**                                          **PLAINTIFF**

**V.**                              **No.  14-20018**

**KENNETH MORPHIS**                                          **DEFENDANT**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Defendant's Motion to Suppress (ECF No. 15) filed July 16, 2014.

The United States of America filed a Response (ECF No. 16) on July 22, 2014.  The matter was

referred to the undersigned on July 24, 2014 and was set for a hearing on July 30, 2014 and held

on that date.  At the hearing only Jason Massey and Ann Morphis testified.

### I.  Background

On November 15, 2013, two officers with the Logan County Sheriff's office, while

searching for stolen four-wheelers encountered the Defendant on his own property. The

Defendant, after being identified was arrested on an outstanding misdemeanor warrant.  A search

incident to the arrest of the Defendant revealed a single shotgun shell.  The officers then

conducted a warrantless search of the wooded area around the Defendant's home and discovered

a shotgun.  On May 7, 2014 the Defendant was Indicted and charged with illegally being in

possession of a firearm and ammunition. (ECF No. 1).  The Defendant filed a Motion to

Suppress (ECF No. 15) on July 16, 2014 claiming the shotgun shell and the shotgun were

illegally seized.

### II.  Discussion

-1-

**A.  Entry onto the land.**

Officer Massey testified that he was an investigator with the Logan County Sheriff's

Office in November 2013 and he and Officer Gack were investigating the theft of five or six  four

wheelers in Logan County.   On November 13, 2013, operating on a tip from the landowner,

Logan County authorities found a stolen four wheeler at 932 Tanyard Mountain Road.  An

individual (Wayne Turpin) fled the scene and was shortly stopped and arrested in possession of a

stolen truck and trailer and a John Deere tractor. Based upon the arrest of Mr. Turpin and the

recovery of the four wheeler at 932 Tanyard Mountain Road the two investigators decided to

"drive around the area" and look for four wheeler tracks. Investigator Massey testified that they

went up an 'old forest road" next to an abandoned trailer. (Defendant Exhibit #1). Massey

testified that he had never been on that "road" before but that Officer Gack, who was driving told

him that it was an old road that went up to a Wildlife Management Area.  They took the road

north past an area that was a dump and then as far north as they could go. Massey testified that he

saw no signs prohibiting trespassing when he entered the "road".

Ms. Ann  Morphis testified that she owned the land in question and had for 30 years.  The

land comprised 30 acres.  She testified that the "road" depicted in Defendant's Exhibit #1 was

not a road but was a "driveway" .  She also testified that it had no trespassing signs posted just to

the right of the road as it intersected Tanyard Mountain Road. (Defendant's Exhibit #11) along

with another sign to the left of the road. (Defendant's Exhibit #12).  Ms. Morphis admitted that

individuals would tear the signs down and they would have to be replaced but that she personally

replaced Defendant's number 11 and 12 within the last three to four years. The driveway/road

does not have any barrier across it and Ms. Morphis testified that the large white areas north of

the abandoned trailer in Defendant's number 1 are dumping areas and that individual have been coming onto her property for years and engaged in illegally dumping their trash.

The officers testified that they did not see any signs as they entered what they thought was an old wildlife service road.  There was some discussion of the Arkansas Statute concerning trespassing however the court finds the trespassing statute to not be relevant to the Constitutional question.  Even if it were the statute in question specifically provides that "[T]his section does not apply to a law enforcement officer in the line of duty.  A.C.A. § 5-39-305 (d)(2).

Likewise, federal case law approves the action of the officers. Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited. *See U.S. v. Weston* 443 F.3d 661, 667 (C.A.8 (Mo.),2006), *citing  United States v. Raines*, 243 F.3d 419, 421 (8th Cir.200).

The intrusion in this case was limited for a legitimate law enforcement purpose because they were looking for evidence of recent thefts of four wheelers.  The trailer that was adjacent to the access point was abandoned, and countless people accessed and used it to carry their trash up to a point north of the abandoned trailer.

## B.  Seizure of the Shotgun Shell:

Massey testified that they went farther north than anything depicted on Defendant's Exhibit #1 and stopped when they could drive no further.  (Government Exhibit #1 and 2). They then continued north toward Tanyard Mountain on foot for some distance, then turned west for a distance and began to work their way back south all the time looking for recent four wheeler tracks. Massey testified that the area is heavy woods and that he never encountered a fence and

-3-

ultimately encountered a gas line easement. (Government's Exhibit 3).  In looking down the easement depicted in Government's Exhibit #3 you can see the Defendant's trailer. The easement finally intersects Ann Morphis' property at Tanyard Mountain Road. (Government's Exhibit #6). The Defendant's was living in a trailer on his mother's property at 1125 Tanyard Mountain Road (See Government's Exhibit #7) and the area behind the trailer is depicted in Government's Exhibit #8).

Massey testified that as they were moving along the gas easement a voice called out asking who they were.  Massey noticed a dark shape in the woods with a black cowboy hat. The officers identified themselves as Sheriff's Officers and the individual began to move away from them.  Massey told him to stop but the individual continued to move away.  Massey started walking toward the individual and again instructed him to stop which he did.  As soon a Massey approached the Defendant he recognized him because he had dealings with him in the past and he knew that there was a misdemeanor warrant for theft of property for the defendant because he had personally viewed that warrant.  The Defendant was arrested and in a search incident to the arrest a shotgun shell was found in the Defendant's jacket pocket.

"An investigatory, or Terry, stop without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot." *United States v. Navarrete–Barron*, 192 F.3d 786, 790 (8th Cir.1999) *(citing Terry v. Ohio*, 392 U.S. 1, 25–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "When justifying a particular stop, police officers 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " Id. (*quoting Terry*, 392 U.S. at 21, 88 S.Ct. 1868). "In deciding whether to conduct a Terry stop, an officer may rely on information provided

-4-

by other officers as well as any information known to the team of officers conducting the investigation." Id.

In determining whether an investigatory detention is reasonable, we consider "the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In *United States v. Arvizu,* the Supreme Court re-emphasized that it is "the totality of the circumstances" that determines whether an officer has reasonable suspicion to make a Terry investigative stop. 534 U.S. 266, 275, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).We also ask "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Id. at 686  There is no bright line rule; instead, "common sense and ordinary human experience must govern over rigid criteria." *See  U.S. v. Morgan*  729 F.3d 1086, 1090 (C.A.8 (Neb.),2013) citing *United States v. Sharpe,* 470 U.S. 675, at 685; and  see *United States v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

 "[Q]uestions concerning a suspect's identity are a routine and accepted part of many Terry stops." *Hiibel v. Sixth Jud. Dist. Court of Nev., Humboldt Cnty*., 542 U.S. 177, 186, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). An officer's order to an individual to stop in order to get investigatory information has been upheld by the 8th Circuit. *See U.S. v. Hightower*, 716 F. 3d 1117 C.A.8 (Ark.) 2013.

In this case the officers were conducting a legitimate investigation into the theft of four wheelers in the area by looking for recent tire tracks.  They went up what they believed was an old forest road and began their investigation on foot. They encountered no fencing while moving through the area. While following the gas easement and moving through a very heavily wooded

area the officers encounter an individual.  They request that individual to stop so they can make inquiry about their investigation and the individual ultimately complies with their request.  When the court looks at the totality of the circumstances surrounding the officers contact with the Defendant is appears that the Terry stop was associated with a reasonable law enforcement purpose.  As soon as the officer actually makes contact with the Defendant he recognizes who he is and that there was a warrant for his arrest and the search and seizure of the shotgun shell was pursuant to that lawful arrest.

**C.  Seizure of the Shotgun**:

Massey testified that he called another deputy to come to the trailer and transport the Defendant because their vehicle was back in the woods.  After the Defendant was transported Massey testified that he went back into the woods to where he first encountered the Defendant. There he found a loaded 12 gauge shotgun lying on the ground and next to a felled tree and in proximity to where he first observed the Defendant. (Government's Exhibit #4). Massey testified that the distance from the back door of the trailer to where the gun was found was 348 feet and the distance from the mowed area of the back yard to the gun was 315 feet. He also testified that the gun was about 20 yards away from the gas easement.

The Fourth Amendment protects a home and its curtilage -the area immediately surrounding a dwelling house-from unreasonable warrantless searches. *United States v. Dunn,* 480 U.S. 294, 300-04, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and is typically comprised of land adjoining a house, often within some type of enclosure such as a fence.*" United States v. Boyster*, 436 F.3d 986, 991 (8th Cir.2006) (*citing Hester v.*

*United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924)).

The Dunn decision set forth four factors the court is to consider in making a curtilage determination: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *U.S. v. Dunn* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139 (U.S.,1987).  The court went on to say that " We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a "correct" answer to all extent-of-curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection." (Id.).

However, this protection does not extend past the curtilage. Officers are permitted to enter a resident's property to observe buildings located outside the home's curtilage. *United States v. Mooring*, 137 F.3d 595, 596 (8th Cir.1998). Also "The Fourth Amendment protects the curtilage of an individual's residence, but not surrounding open fields." *See U.S. v. Mathias* 721 F.3d 952, 955 (C.A.8 (Iowa),2013) citing *United States v. Boyster*, 436 F.3d 986, 991 (8th Cir.2006) (*citing Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924)). For the purposes of the Fourth Amendment, an open field may be any "unoccupied or undeveloped area outside of the curtilage" and "need be neither 'open' nor a 'field' as those terms are used in common speech." *United States v. Dunn*, 480 U.S. 294, 304, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (*quoting Oliver v. United States,* 466 U.S. 170, 180 n. 11, 104 S.Ct. 1735, 80

L.Ed.2d 214 (1984)).

The area where the Defendant was encountered and where the shotgun was found was not the curtilage of the home but was and open field as defined by case law.  The area in question was in no way associated with the  intimate activity associated with the sanctity of a man's home and the privacies of life. It was more than 300 feet from the trailer, it was not enclosed,  and was not put to any use as it was clearly native forest.

### III.  Conclusion

Based upon the forgoing I recommend that the instant Motion to Suppress (ECF No. 15 ) be **DENIED.**

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of July 2014.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE